

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN D.,<br><br>                                    Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Commissioner of<br>Social Security,<br><br>                                    Defendant. | Case No.:  23-cv-1697-AJB-JLB<br><br>**ORDER REVERSING FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING CASE FOR FURTHER PROCEEDINGS [ECF NO. 15]** |

On September 14, 2023, Plaintiff Jonathan D.[1] ("Plaintiff") commenced this action against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security,[2] ("Defendant" or "Commissioner") for judicial review under 42 U.S.C. § 405(g) of a final adverse decision for a period of disability, disability insurance benefits, and supplemental security income. (ECF No. 1.) Defendant filed the Administrative Record on November

---

[1] The Court refers to Plaintiff using only his first name and last initial pursuant to the Court's Civil Local Rules. *See* S.D. Cal. Civ. R. 7.1(e)(6)(b).

[2] Martin O'Malley is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

1

13, 2023. (ECF No. 8.) Plaintiff filed a Merits Brief on February 20, 2024. (ECF No. 15.) Defendant filed a Responding Brief on March 21, 2024. (ECF No. 17.)

For the following reasons, the final decision of the Commissioner is **REVERSED**, and the case is **REMANDED** for further proceedings.

## I.     BACKGROUND

### A.     Factual and Procedural History

Plaintiff was born in 1989. (AR 341.)[3] He attended special education classes in school and obtained his high school diploma in 2007. (AR 46, 54-55, 347, 779.) He worked as a manual laborer for Pride Industries from 2009 to 2015. (AR 347.) On or about September 4, 2019, Plaintiff filed applications for disability insurance benefits and supplemental security income under the Social Security Act. (AR 311-21.) He alleged that he had been disabled since June 1, 2015, due to mental depression, spinal stenosis, lumbar spondylosis, and abdomen pain. (AR 346.) Plaintiff's applications were denied on initial review and again on reconsideration. (AR 169-73, 183-88.) An administrative hearing was conducted on July 6, 2022, by Administrative Law Judge ("ALJ") Howard K. Treblin. (AR 41-68.) During the hearing, Plaintiff amended his onset date to August 1, 2020. (AR 65.) Plaintiff testified that working as a laborer "put a toll on [his] back" and he was no longer able to work because he could not sit or stand for long periods of time. (AR 47, 57.) On November 29, 2022, the ALJ issued a decision and concluded that Plaintiff was not disabled from August 1, 2020, through the date of his decision. (AR 18-34.) Plaintiff requested a review of the ALJ's decision; the Appeals Council denied the

---

[3] "AR" refers to the Administrative Record filed on November 13, 2023. (ECF No. 8.) The Court's citations to the AR use the page references on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by CM/ECF.

23-cv-1697-AJB-JLB

request on July 13, 2023. (AR 1-6.) Plaintiff then commenced this action pursuant to 42 U.S.C. § 405(g).

**B.     ALJ's Decision**

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520 and 416.920; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (describing five steps).[4] The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since August 1, 2020, the alleged onset date. (AR 20.) At step two, the ALJ found that Plaintiff's severe impairments included degenerative disc disease, obesity, bursitis, plantar fasciitis, depressive disorder, and borderline intellectual functioning. (*Id.*) The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (*Id.*)

The ALJ found that Plaintiff had the following residual functional capacity:

> [L]ight work as defined in [20 C.F.R. § 404.1567(b) and 416.967(b)] except occasional postural activities (stooping, kneeling, crouching, crawling, bending, and climbing); sit, stand, walk totals are six hours each; understand, remember, carry out, apply simple repetitive task type of jobs, job instructions, one to two step type job activities; interact appropriately with coworkers and supervisors but no collaborative work, no teamwork, nonpublic; can respond appropriately to supervision and routine work settings and situations as well as changes in a routine work situation or setting; can make decisions, use judgment, ask questions appropriately.

(AR 24-25.)

---

[4] The disability insurance benefits ("DIB") and supplemental security income ("SSI") regulations relevant to this case are virtually identical; therefore, only the DIB regulations will be cited in the remainder of this order. Parallel SSI regulations are found in 20 C.F.R. §§ 416.900–416.999 and correspond with the last digits of the DIB cite (e.g., 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

23-cv-1697-AJB-JLB

At step four, the ALJ determined that Plaintiff had no past relevant work, despite his previous employment at Pride Industries, following the vocational expert's hearing testimony that Plaintiff's past work as a manual laborer for Pride was not competitive employment. (AR 32.)[5] At step five, the ALJ found that Plaintiff could perform the requirements of the representative occupations of housekeeping cleaner, burrito maker, and plastic assembler. (AR 33.) Accordingly, the ALJ concluded that Plaintiff had not been under a disability from August 1, 2020, through the date of his decision. (AR 34.)

**C.   Disputed Issues**

Plaintiff presents two arguments in his brief: (1) the mental residual functional capacity assessed by the ALJ omitted limitations without explanation, rendering it insufficient, and (2) the ALJ improperly rejected the medical opinion of Dr. Kathy A. Vandenburgh, the consultative psychologist, resulting in the erroneous omission of work-preclusive limitations in Plaintiff's mental residual functional capacity.

## II.   LEGAL STANDARDS

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. § 405(g). The scope of judicial review is limited, however, and a decision denying benefits will be set aside "only if is not supported by substantial evidence or is based on legal error." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024) (citations omitted). Substantial evidence means "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a

---

[5] The vocational expert testified that Pride Industries "provides supportive employment services," also known as a "sheltered work environment." (AR 59, 60.) She explained that jobs in these work environments generally include "extra job coaching" and the employees "do[] not perform all the job tasks that would be assigned to people without disabilities in the same type of job." (AR 60.)

23-cv-1697-AJB-JLB

conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for . . . evidentiary sufficiency [under the substantial evidence standard] is not high."). The court must consider the entire record, including the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The district court may affirm, modify, or reverse the Commissioner's decision. 42 U.S.C. § 405(g). The matter may also be remanded to the Social Security Administration for further proceedings. *Id.*

## III.   DISCUSSION

### A.   Need for "Additional Instruction and Supervision" in Mental Residual Functional Capacity Assessment

Plaintiff first argues that the mental residual functional capacity ("RFC") assessed by the ALJ omitted limitations without explanation, rendering it insufficient. (Pl.'s Br., ECF No. 15 at 15-19.) Specifically, he asserts that the ALJ failed to include the limitation that Plaintiff required "additional instruction and supervision" in the work setting, even though substantial evidence in the record supported this restriction. (*Id.* at 16.) The Commissioner contends that the RFC formulated by the ALJ reasonably included all limitations that were supported by the evidence and excluded any alleged allegations that the ALJ found unreliable. (Def.'s Br., ECF No. 17 at 6-11.)

The Court agrees with Plaintiff that his need for "additional supervision" was supported by the evidence and was not encompassed in the RFC formulated by the ALJ, and that the ALJ's failure to include this limitation in the RFC constituted error.

23-cv-1697-AJB-JLB

### 1.      Residual functional capacity

Residual functional capacity is defined as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, . . . mean[ing] 8 hours per day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (emphases omitted). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007). In formulating the RFC, the ALJ must account for all the claimant's medically determinable impairments, including those that are not severe, and evaluate "all of the relevant medical and other evidence." *See* 20 C.F.R. § 404.1545(a)(2)-(3).

"It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *see also* 20 C.F.R. § 404.1546(c). The RFC does not need to directly correspond to a specific medical opinion; rather, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec. Admin*, 807 F.3d 996, 1006 (9th Cir. 2015); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (noting the ALJ's responsibility to weigh conflicting medical evidence and translate accepted medical opinions into "concrete restrictions"). The ALJ's RFC assessment should be affirmed if the ALJ has applied the proper legal standard and his decision is supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). An ALJ errs, however, when he ignores "significant and probative evidence in the record" and provides an incomplete RFC determination. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012); *see also Valentine v.*

23-cv-1697-AJB-JLB

*Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (holding that "an RFC that fails to take into account a claimant's limitations is defective").

## 2.    ALJ'S RFC assessment

The ALJ here found that Plaintiff had the mental residual functional capacity to:

> [U]nderstand, remember, carry out, apply simple repetitive task type of jobs, job instructions, one to two step type job activities; interact appropriately with coworkers and supervisors but no collaborative work, no teamwork, nonpublic; can respond appropriately to supervision and routine work settings and situations as well as changes in a routine work situation or setting; can make decisions, use judgment, ask questions appropriately.

(AR 24-25.)

## 3.    Analysis

Plaintiff contends that substantial evidence in the record supports his need for "additional instruction and supervision" in the workplace, and that the RFC assessed by the ALJ failed to incorporate this requirement. (Pl.'s Br., ECF No. 15 at 16-17.) To support his contention, Plaintiff cites to the consultative psychological evaluation with Dr. Vandenburgh, including his Wechsler Adult Intelligence Scale-IV ("WAIS-IV") and Wechsler Memory Scale-IV ("WMS-IV") results, which showed "significant deficits in memory and performance," as well as his inabilities during the evaluation to recall a single item after a three minute delay, complete tasks without repeated and more detailed directions, and complete portions of basic testing even with additional explanation. (*Id.*, referring to AR 781, 782.) Plaintiff also relies on his receipt of special education services in school (AR 779 [report to Dr. Vandenburgh]), his never having lived independently (*id.*), his need for help and reminders from his parents to complete basic chores (AR 51, 56-57 [Plaintiff's hearing testimony]; AR 361 [function report completed by stepfather]), his inability to answer a nurse practitioner's questions without his stepfather's assistance (AR 948 [treatment note by Alicia Burke, DNP]), and his inability to follow written or

spoken instructions at home (AR 364 [function report completed by stepfather]) to support his argument. (Pl.'s Br., ECF No. 15 at 17.)

Plaintiff correctly observes that the ALJ acknowledged his need for supervision in his decision. (*Id.* at 17-18.) The ALJ twice proffered that Plaintiff "can understand, remember, carry out, apply simple repetitive task type of jobs, job instructions, and one to two step type job activities because he was able to recall some details and focus on tasks with *some supervision* at the psychiatric consultative examination." (AR 29, 30 [emphasis added].) The ALJ also found persuasive the opinions of two state agency psychologists, Drs. Dara Goosby and Kim Morris, who both opined that Plaintiff was moderately limited in his ability to sustain an ordinary routine without special supervision. (AR 30, 104, 127.) The Court thus finds that substantial evidence in the record supported that Plaintiff was moderately limited in his ability to perform work activities or sustain a normal routine without additional supervision.[6]

While the ALJ acknowledged Plaintiff's moderate limitation in the ability to work without additional supervision, he did not include this restriction in his RFC. It appears that the ALJ believed that an RFC limiting Plaintiff to simple, repetitive, one- to two-step type jobs sufficiently addressed his need for additional supervision, as indicated by the following statement in the ALJ's decision:

---

[6] Substantial evidence in the record does not, however, support that Plaintiff required "additional instruction" if limited to simple, repetitive, one- to two-step type tasks. The consultative examiner, Dr. Vandenburgh, and both state agency psychologists found that while Plaintiff was at least moderately impaired in his ability to understand detailed and complex instructions, he was not significantly limited in his ability to understand and remember simple instructions. (AR 104, 127, 783.) It is not clear from Plaintiff's brief whether he contends that the ALJ was required to include reference to a need for "additional instruction," separate from the need for "additional supervision," in the RFC. (*See* Pl.'s Br., ECF No. 15 at 15-19.) To the extent he does make such a contention, the Court finds it is without merit.

23-cv-1697-AJB-JLB

> [T]he claimant was able to focus on tasks, but needed supervision to persist and he needed directions to be explained in more detail for him to understand them at the psychiatric consultative examination, which is consistent with understanding and remembering simple instructions and sustaining concentration, persistence and pace for simple one to two step tasks.

(AR 30.)

The ALJ was mistaken. District courts have consistently held that a limitation to simple, repetitive tasks does not account for a need for additional supervision. *See Proulx v. Kijakazi*, Case No. 18cv1755 JAH-BGS, 2023 WL 5737785, at *6 (S.D. Cal. Sept. 5, 2023) (holding that a limitation to simple routine tasks did not provide for the plaintiff's moderate limitations in the ability to "perform work activities without special or additional supervision"); *Davis v. Saul*, Case No. 20cv814-BLM, 2021 WL 2333256, at *10 (S.D. Cal. June 7, 2021) (concluding that the ALJ erred by failing to include in the RFC or hypotheticals that the plaintiff was moderately limited in her ability to perform work activities or an ordinary routine without special supervision or to obtain testimony or other evidence establishing that the limitation language utilized by the ALJ captured the restrictions identified in the medical evidence); *Donna M. v. Saul*, Case No. 19-cv-03134-DMR, 2020 WL 6415601, at *4 (N.D. Cal. Nov. 2, 2020) (finding limitation to simple, routine tasks in RFC did not address other moderate limitations, including the plaintiff's ability to perform work activities on a consistent basis without special or additional supervision.); *Lisardo S. v. Berryhill*, Case No. 5:18-cv-00480-AFM, 2019 WL 773686, at *5 (C.D. Cal. Feb. 20, 2019) (finding the ALJ's RFC restricting the plaintiff to simple work with a predictable work routine and no more than simple decision making did not accommodate the plaintiff's moderately limited ability to perform work without special or additional supervision.).

The Court accordingly finds that the ALJ erred by failing to incorporate Plaintiff's moderate limitation in his ability to perform work activities or sustain a normal routine without additional supervision in his RFC assessment. *See Hill*, 698 F.3d at 1161 (providing that an ALJ commits error when he ignores evidence in the record and provides an incomplete RFC determination); *see also Valentine*, 574 F.3d at 690 ("[A]n RFC that fails to take into account a claimant's limitations is defective."). The ALJ's error was not harmless, because the hypothetical posed by the ALJ to the vocational expert at the administrative hearing, (*see* AR 60-61), mirrored the RFC and thus was similarly incomplete and defective. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("harmless error . . . exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination") (internal quotation marks and citation omitted).

The ALJ's failure to formulate an RFC that encompassed all of Plaintiff's limitations requires the case to be remanded. *See Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995) ("[I]n meeting [the] burden of showing the claimant's ability to work, the [Commissioner] may only rely upon the vocational expert's testimony if the questions posed by the ALJ include all of the claimant's functional limitations, both physical and mental.").

**B.    Evaluation of Consultative Examiner's Opinion**

Plaintiff's second argument is that the ALJ improperly rejected the medical opinion of Dr. Vandenburgh, the consultative psychologist, resulting in the erroneous omission of work-preclusive limitations in Plaintiff's RFC. (Pl.'s Br., ECF No. 15 at 19-23.) In particular, Plaintiff contends that the ALJ erred by failing to consider the "marked" limitations assessed by Dr. Vandenburgh in her evaluation of Plaintiff's residual functional capacity. (*Id.*) The Commissioner argues in response that the ALJ

23-cv-1697-AJB-JLB

reasonably found the opinion of Dr. Vandenburgh was partially persuasive. (Def.'s Br., ECF No. 17, at 2-5.)

The Court finds that substantial evidence supports the ALJ's evaluation of Dr. Vandenburgh's opinion.

### 1.    Applicable standards

The Social Security Administration's revised 2017 regulations apply to Plaintiff because he filed his claim after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416); 20 C.F.R. § 404.1520c. Under the revised regulations, an ALJ is required to evaluate medical opinions and prior administrative medical findings[7] by assessing their "persuasiveness." *See* 20 C.F.R. § 404.1520c. In determining how "persuasive" a medical source's opinions are, the most important factors are supportability and consistency. *Id.* § 404.1520c(b)(2). "Supportability" is the extent to which a medical opinion is supported by relevant objective medical evidence and the medical source's supporting explanations. *Id.* § 404.1520c(c)(1). "Consistency" is the extent to which a medical opinion is consistent with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2). The ALJ's decision must contain an explanation of how the ALJ considered the supportability and consistency factors. *Id.* § 404.1520c(c)(2). The ALJ is also required to consider the treatment or examining relationship, specialization, and "other factors," but his or her decision need not contain an explanation of how these factors were considered. *Id.* § 404.1520c(b)(2), (c)(1)-(5); *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

//

---

[7] A "prior administrative medical finding" consists of a finding about a medical issue by a "Federal or State agency medical or psychological consultant[] at a prior level of review." 20 C.F.R. § 404.1513(a)(4).

## 2.      Dr. Vandenburgh's evaluation and opinion

Dr. Vandenburgh conducted a psychological evaluation of Plaintiff on February 21, 2020. (AR 777-84.) The doctor opined that Plaintiff's intellectual functioning appeared to be below average. (AR 778.) She observed, "At times directions had to be repeated and explained in more detail than usual so he could understand them. Even with several explanations there were some tasks he did not understand." (*Id.*) Dr. Vandenburgh noted that Plaintiff was able to bathe and dress independently, but "he needs reminders from his [parents] for personal grooming . . . [and] to take his medication and complete tasks." (AR 780.) She reported that Plaintiff did not have a current driver's license but prior to his back injury, "was able to take public transportation to and from work." (*Id.*) A typical day included getting dressed, personal grooming, breakfast, and watching television. (*Id.*)

During her mental status examination, Dr. Vandenburgh observed that Plaintiff appeared to be depressed and his speech was difficult to understand. (*Id.*) His thought process was organized, and he could recall some details regarding his personal history. (AR 780-81.) He did not know the current date but knew the current month and day of the week. (AR 781.) He could immediately recall three objects but could not recall any of the objects after three minutes. (*Id.*) Plaintiff was able to focus on tasks but "needed some supervision to persist at tasks." (*Id.*)

On the WAIS-IV test, Plaintiff's verbal comprehension tested in the "extremely low to minimal borderline range" and his perceptual reasoning, working memory, and processing speed in the "extremely low range." (AR 782.) His full-scale IQ score was 60, placing him in the "extremely low range." (*Id.*) Dr. Vandenburgh stated, however, that these scores were likely deflated due to a learning disability and were lower than expected given Plaintiff's previous work history and ability to use public transportation

12

independently. (*Id.*) Plaintiff's memory index scores also tested in the "extremely low range" on the WMS-IV test. (*Id.*) Dr. Vandenburgh believed these scores were valid. (*Id.*)

Dr. Vandenburgh proffered the following assessment of Plaintiff's functional abilities:

1. Ability to socially interact with others at an age-appropriate level, as demonstrated with this evaluator. Limitations: Mild due to below average intellectual functioning.

2. Ability to understand instructions, as demonstrated with this evaluator. Limitations: This claimant was able to understand simple instructions. **He had moderate to marked impairment understanding detailed and complex instructions.**[8]

3. Ability to sustain an ordinary routine without sustained supervision. Limitations: Moderate. He needs reminders to take his medication and prompts and reminders to bathe and dress.

4. Ability to complete simple tasks. Limitations: This claimant is capable of performing simple repetitive tasks. He worked successfully for Pride Industries performing manual labor from 2009 to 2015; however, due to a back injury he had to stop working. **In a typical job setting he will likely have marked impairment performing tasks that involve a significant amount of intellectual functioning and memory functioning, marked impairment maintaining appropriate pace,** moderate impairment coping with work-related stress, and moderate impairment making appropriate work-related decisions. An appropriate specialist needs to comment on the claimant's physical condition.

5. **Ability to complete detailed tasks. Limitations: Marked.**

6. **Ability to complete complex tasks. Limitations: Marked.**

---

[8] A five-point scale is typically used to rate the degree of functional limitation resulting from a mental impairment: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4).

13

23-cv-1697-AJB-JLB

7. Ability to concentrate for at least two-hour increments at a time, in order to maintain a regular work schedule. Limitations: This claimant was able to attend and concentrate adequately however often questions and directions had to be repeated and explained in more detail so he could understand them.

8. Ability to avoid normal hazards: Limitations: None.

9. Ability to handle funds. Limitations: The claimant's judgment appears to be adequate in terms of managing funds. However[,] he reports his mother has always managed his money. Due to below average intellectual functioning and memory impairment[,] he will likely need assistance.

(AR 783-84 [emphases added].)

### 3. ALJ's evaluation of Dr. Vandenburgh's opinion

The ALJ found Dr. Vandenburgh's opinion partially persuasive. (AR 31.) He explained:

The opinion is supported by an in-person examination using objective techniques. Portions of the opinion are consistent with objective evidence from other sources. For example, treatment notes state the claimant's memory appeared impaired even though it was not formally tested, which is consistent with the test results and the portion of the opinion that indicates the claimant can understand simple instructions and perform simple repetitive task[s]. However, the undersigned finds less persuasive the portion of the opinion that states the claimant has marked limitations. Although the claimant demonstrated impairment in his memory and concentration, the impairments did not rise to the level of marked limitations. For example, the claimant testified he is in the process of obtaining a driver's license, which indicates he is able to understand and remember the rules of the road as well as how to get from one location to another, which is inconsistent with marked limitation in intellectual functioning and memory functioning. Furthermore, the claimant graduated from high school, which requires significant intellectual functioning and memory functioning.

14

23-cv-1697-AJB-JLB

(*Id.* [exhibit reference omitted].) In other words, the ALJ found that Dr. Vandenburgh's opinion was not fully consistent with other evidence in the record. *See Woods*, 32 F.4th at 792 ("Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'") (citing 20 C.F.R. § 404.1520c(c)(2)).

### 4. Analysis

Plaintiff contends that the two reasons proffered by the ALJ to discount Plaintiff's marked limitations were "inaccurate." (Pl.'s Br., ECF No. 15 at 21-22.) The ALJ first reasoned that Plaintiff being in the process of obtaining a driver's license indicated that he did not have marked limitations. (AR 31.) At the administrative hearing, the ALJ asked Plaintiff, "Do you have a driver's license?" to which Plaintiff responded, "I'm getting one right now. It's in the process." (AR 46.) The ALJ could reasonably find that Plaintiff's apparent ability to understand and remember the rules of the road, as well as how to get from one location to another, were inconsistent with four of the five marked impairments assessed by Dr. Vandenburgh, including Plaintiff's intellectual functioning, memory functioning, understanding detailed instructions, and understanding complex instructions. Plaintiff's testimony that he was in the process of obtaining a driver's license thus constituted "such relevant evidence as a reasonable mind might accept as adequate" to support the ALJ's conclusion that Dr. Vandenburgh's opinions regarding Plaintiff's marked impairments were less persuasive than the remainder of her opinion. *See Sandgathe*, 108 F.3d at 980; *Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *see also Biestek*, 587 U.S. at 103 ("[T]he threshold for . . . evidentiary sufficiency [under the substantial evidence standard] is not high.").

The ALJ's second reason for discounting the marked limitations assessed by Dr. Vandenburgh was Plaintiff's graduation from high school, which the ALJ indicated

reflected "significant intellectual functioning and memory functioning." (AR 31.) Plaintiff argues that considering his full-scale IQ score of 60, which was in the "extremely low range," (*see* AR 782), "[i]t is logical to conclude that Plaintiff would have required accommodations and special services to complete his high school education." (Pl.'s Br., ECF No. 15 at 22.) Plaintiff ignores, however, the conflicting evidence in the record regarding Plaintiff's participation in special education. While a disability form completed on Plaintiff's behalf reflects that he received special education services from 2004 to 2007, which would have been from tenth through twelfth grades, Plaintiff told Dr. Vandenburgh that he only received special education services in elementary school. (*See* AR 347, 779.) The evidence concerning Plaintiff's IQ score is also ambiguous, as Dr. Vandenburgh found that Plaintiff's WAIS-IV results, including the full-scale IQ, were "likely deflated due to a learning disability" and were lower than expected given Plaintiff's reported abilities of "being able to take public transportation independently in the past" and maintaining employment at Pride Industries. (AR 782.)

It is within the ALJ's purview "to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)). Given the uncertainties as to whether Plaintiff required special education services to graduate high school, and whether Plaintiff's full-scale IQ score was valid, the ALJ could properly find that Dr. Vandenburgh's opinions regarding Plaintiff's marked impairments were inconsistent with Plaintiff having completed high school. *See Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Furthermore, even if it were found that substantial evidence did not support the ALJ's reasons for finding Dr. Vandenburgh's opinion inconsistent with other evidence in the record, the ALJ committed, at most, harmless error. *See id.* ("A decision of the ALJ

16

will not be reversed for errors that are harmless.") (citation omitted); *see also Tommasetti*, 533 F.3d at 1038. Neither of the state agency psychologist opinions, the only other two medical opinions in the record containing an assessment of Plaintiff's mental functional abilities, found that Plaintiff had any marked impairments. (AR 103-05, 126-30.) Additionally, in contrast to Dr. Vandenburgh's finding that Plaintiff had a marked impairment in maintaining pace, both state agency psychologists determined that Plaintiff could sustain concentration, persistence, and pace for simple one- to two-step tasks during a normal eight-hour workday and forty-hour workweek. (AR 104, 128.) State agency medical consultants "are highly qualified and experts in Social Security disability evaluation." *See* 20 C.F.R. § 404.1513a(b)(1). The ALJ found these opinions persuasive, (*see* AR 30), and was entitled to rely on them in his evaluation of the evidence of record, including Dr. Vandenburgh's opinion. *See Stiffler v. O'Malley*, 102 F.4th 1102, 1107 (9th Cir. 2024) (relying on opinion of state agency consultant in finding that substantial evidence supported ALJ's determination that doctor's opinion was inconsistent with other record evidence).

After considering the record as a whole and evaluating both the evidence that supports and the evidence that detracts from the Commissioner's decision, (*see Desrosiers*, 846 F.2d at 576), the Court finds that the state agency psychologist opinions, which constituted substantial evidence, supports the ALJ's evaluation of Dr. Vandenburgh's opinion. Therefore, Plaintiff's second argument is without merit.

## C.    Remedy

Plaintiff requests that the Court remand for additional proceedings. (Pl.'s Br., ECF No. 15 at 23.) "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981*); see also Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (noting that a Social Security case should usually be remanded to

17

remedy defects in the administrative proceeding). Here, additional proceedings can remedy the defects in the ALJ's decision. Accordingly, remand for additional proceedings is appropriate.

### IV.   CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this opinion. The Clerk is directed to issue a judgment and close this case.

**IT IS SO ORDERED**.

Dated:  July 22, 2024

Hon. Anthony J. Battaglia
United States District Judge

23-cv-1697-AJB-JLB